

## In the United States Court of Federal Claims

**No. 17-2033C**
**Filed: May 4, 2018**

**FILED**

**MAY   4 2018**

U.S. COURT OF
FEDERAL CLAIMS

* * * * * * * * * * * * * * * * *

**KEVIN KEMPER,**                              *

        **Plaintiff,**                    *

**v.**                                         *

**UNITED STATES,**                             *

        **Defendant.**                   *

* * * * * * * * * * * * * * * * *

<u>Pro Se</u> **Plaintiff; In Forma
Pauperis; Motion to
Dismiss; Subject Matter
Jurisdiction; Breach of
Contract Claim; Tort Claim.**

    **Kevin Kemper**, <u>pro se</u>, Phoenix, AZ.

    **Richard Schroeder**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC for defendant. With him were **Tara K. Hogan**, Assistant Director, Commercial Litigation Branch, Civil Division, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, Civil Division, and **Chad A. Readler**, Acting Assistant Attorney General.

### O P I N I O N

<u>**HORN, J.**</u>

    On December 22, 2017, <u>pro se</u> plaintiff Kevin Kemper filed a complaint with this court in the above-captioned case. Plaintiff separately filed an Application to Proceed <u>In Forma Pauperis</u> that same day. In a sometimes confused complaint, plaintiff appears to be alleging that an office within the United States Department of Veterans Affairs (VA)[1] acted fraudulently when it allegedly stated on its website that it "wold talk to prospective employers and get interviews for the net[2]," but then "claimed that they did none of the services included on their web site." Plaintiff concludes in his complaint: "[That is fraudulent.]" Plaintiff also appears to be alleging in his complaint that the "Department of voc Rehab" breached an agreement to find paid volunteer work for plaintiff. Plaintiff states in his complaint:

---

[1] Plaintiff, at times, refers in his complaint to the VA as the "department of Vocational Rehabilitation," the "Department of voc Rehab," or the "Department of Voc Rehab."

[2] Plaintiff's unfinished and misspelled words, unusual spacing, fragments of sentences, brackets, and capitalization which appear in his complaint have been included in this opinion unchanged.

The Department of voc Rehab would get the Plaintiff a volunteer job which the VA would pay for. The department of voc Rehab did neither—they found no volunteer job for the Plaintiff and did not coordinate 3 months payment for the Plaintiff.

Plaintiff further states in his complaint that he "seeks general damages of $1900, t he total of three months of volunteering that the Plaintiff was available for and he seeks Punitive damages in the amount of $10,000."

## FINDINGS OF FACT

According to plaintiff, the "Veteran's Administration has a department of Vocational Rehabilitation which is supposed to help veterans get counseling when sought and a job also, when sought." Plaintiff alleges that he is "slightly handicapped and has few documents available to give prospective employers which cause his employment applications to be ignored." He then states that he "examined the VA's web site and reviewed the offerings for veterans," and that "[o]ne of the offerings was to work with the vet and help him or her get employment."

Plaintiff also states in his complaint that he attended a one-time meeting with "Mr. Arnett," a "counselor" at the VA, and then told Mr. Arnett that he "wanted help finding retail stores that would interview him per the department's web site." Plaintiff alleges that:

The counselor [Mr. Arnett] said he knew nothing of this web site and his Voc Ed office did not talk to anyone in the business world. Their only service was to contact federal or state offices to see who could use a volunteer for full time employment for three months duration.

Mr. Arnett also allegedly stated in the meeting, according to plaintiff's complaint, that "the VA would pay the candidates salary," and that "he would have a contract drawn up and the Plaintiff's volunteering was to begin as soon as the contract was signed and the counselor, Mr. Arnett himself, found an office that would take the Plaintiff as a volunteer." In response to Mr. Arnett's description of the alleged VA service, plaintiff states in his complaint that he "was aghast as this was the very last thing he desired--it was --from Mr. Arnett's perspective--This approach to earning money or none."

"Within a week" of his meeting with Mr. Arnett, plaintiff contends in his complaint that Mr. Arnett referred plaintiff to a "contractor" which "could use a volunteer to stand all day and load food containers into bags for the hungry." Plaintiff, however, "declined this position," because, upon visiting the "contractor," he "found it a place of 100% chaos." Then, a "few weeks later," plaintiff states in his complaint that "on his own accord," he found a "tutoring need at the department of Social Services" and unsuccessfully attempted to fill out an electronic application for the "tutoring need." Plaintiff states in his complaint, that "[t]wo weeks later, Mr. Arnett either called or wrote to the Plaintiff and indicated the Plaintiff was thereby [sic] removed from the volunteer program." Plaintiff

then alleges for the first time in his complaint that he had entered into a "written agreement" with the "Department of Voc Rehab" and Mr. Arnett. Plaintiff specifically states that, "[t]he counselor, Mr. Arnett never did contact any state or federal office seeking a volunteer position for the Plaintiff, per the written agreement the Plaintiff had with the department ["Department of Voc Rehab"] and the counselor, Mr. Arnett."

On January 30, 2018, roughly a month after plaintiff's complaint was filed in this court, plaintiff filed a four-page document titled "APPELLANT'S BRIEF UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS No. 17-15523 & cv-17-00375 PHX GMS KEVIN KEMPER, Appellant." Displayed on the third to last page of this document is the date December 11, 2017. No motion or explanation was included with plaintiff's filing of this four-page document. The document was not filed in compliance with the Rules of the United States Court of Federal Claims Rules (RCFC), including, significantly, missing proof of service on the defendant, as required by RCFC 5.3 (2017). Nonetheless, on February 6, 2018, as a courtesy to the pro se plaintiff, the undersigned ordered that plaintiff's four-page document be filed in the above-captioned case, which provided with access to the defendant.

The first page of the February 6, 2018 document appears to be a cover page, which is labeled at the top of the page as "APPELLANT'S BRIEF." The cover page contains information regarding an apparent appeal by plaintiff to the United States Court of Appeals for Veterans Claims, although no case number for the appeal is listed anywhere in the document. Notably, a search of the electronic filing system for the United States Court of Appeals for Veterans Claims listed no case for plaintiff. The cover page of the document filed with the court lists plaintiff as the appellant and the Secretary of Veteran's Affairs as the appellee and that plaintiff was seeking $1,900.00 of compensatory damages and $19,000,000.00 in punitive damages. The cover page also states that the "Originating Court Case" was a case before the United States District Court for the District of Arizona in Phoenix under case number cv-17-00375-PHX-GMS, which, according to the cover page was subsequently appealed to the United States Court of Appeals for the Ninth Circuit as case number 17-15523.[3] The next three pages of the February 6, 2018 four-page document contain rambling, disjointed, and vague allegations, including plaintiff's allegation that Mr. Arnett signed a contract that he, plaintiff, also had signed. Plaintiff states:

> [S]taff of the Voc Rehab employment program failed to fulfill an alleged p to "get the Plaintiff a volunteer job wich the VA would pay for." --- this

---

[3] Upon review of the electronic filing system for the federal courts, plaintiff's complaint before the District Court for the District of Arizona, as noted in the February 6, 2018 document, was dismissed for lack of subject matter jurisdiction and for failure to state a claim. See Kemper v. United States Dep't of Vocational Rehab., No. 17-00375-PHX-GMS, at 4 (D. Ariz. Mar. 9, 2017) ("Plaintiff's First Amended Complaint fails to state a claim on which relief may be granted and fails to state a basis for this Court to exercise jurisdiction. It is therefore dismissed pursuant to 28 U.S.C. § 1915(e)(2)."), appeal dismissed as frivolous, No. 17-15523 (9th Cir. June 14, 2017).

> ALLEGED PROMISE came from a WRITTEN CONTRACT created by the counselor, Arnett. And Arnett signed it and so did Mr. Kemper, the plaintiff. That e the doubt of alleged promise and makes it a legal contract, albeit a very absurd contract which the plaintiff brought to the a of arnett--who said that is the way the d creates contracts.

Further in the February 6, 2018 filing, plaintiff refers to this alleged contract as a "dumb but legal contract," and also states:

> [I]t is a fact that all employees in government offices who write any contracts are PRESUMED to be qualified and authorized to write such contracts. Example; when a person is stopped by the police or sheriff, the law presumes that the police and sheriff have j and thus, the right to do what they are about to do and their supervisor, later —-and the judge later even, will decide n the legality of the acts taken by the police and sheriff.

On February 20, 2018, defendant United States filed a motion to dismiss the complaint currently before this court pursuant to RCFC 12(b)(1) (2017), alleging that plaintiff's complaint is barred by the doctrine of collateral estoppel because plaintiff previously had asserted the "same claims" before Judge Lettow also of this court in Kemper v. United States, No. 17-768C, 2017 WL 3274942 (Fed. Cl. Aug. 2, 2017) (Kemper I). Defendant characterizes plaintiff's two claims as a "fraud" claim and a "claim that the VA allegedly failed to provide him [plaintiff] with particular benefits in his search for volunteer employment."

Defendant also argues, in the alternative, referring numerous times to Judge Lettow's decision in Kemper I, that this court, similarly, should dismiss plaintiff's complaint "because it does not possess subject-matter jurisdiction to entertain Mr. Kemper's claims." Defendant specifically argues that Judge Lettow in Kemper I "correctly held" that plaintiff's breach of contract claim is "based upon his status as a veteran and the benefits allegedly owed to him by the VA," and, thus, is not a claim within this court's jurisdiction. (citing Kemper I, 2017 WL 3274942, at *2). With regard to plaintiff's fraud claim, defendant argues that Judge Lettow in Kemper I also "correctly held" that this court "does not have jurisdiction over Mr. Kemper's fraud claim because such an allegation is based in tort." (citing Kemper I, 2017 WL 3274942, at *2). Regarding plaintiff's request for punitive damages, defendant also found that Judge Lettow in Kemper I held that it "does not have jurisdiction to grant" plaintiff's request for punitive damages. (citing Kemper I, 2017 WL 3274942, at *2). Defendant then asserts that, as Judge Lettow held in Kemper I, "the appropriate avenue for Mr. Kemper to obtain review of VA decisions would have been for Mr. Kemper to raise them with the Secretary of the VA (citing 38 U.S.C. § 511(a))." (citing Kemper I, 2017 WL 3274942, at *2). Defendant then states that, as Judge Lettow held, "if Mr. Kemper was dissatisfied with the results, his statutory appeal path would be to 'the Board of Veterans Appeals, 38 U.S.C. § 7104,' then to 'the Court of Appeals for Veterans Claims, 38 U.S.C. § 7252(a),' and then 'the Federal Circuit, 38 U.S.C. § 7292(c).'" (citing Kemper I, 2017 WL 3274942, at *2). As of May 4, 2018, plaintiff has failed to file a

response to defendant's motion to dismiss, and the time under the Rules of the Court of Federal Claims to file a response has passed. See RCFC 7.2 (2017).

## DISCUSSION

The court recognizes that plaintiff is proceeding pro se. When determining whether a complaint filed by pro se plaintiffs is sufficient to invoke review by a court, pro se plaintiffs are entitled to a more liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 135 S. Ct. 1909 (2015). However, "there is no 'duty [on the part] of the trial court . . . to create a claim which [plaintiff] has not spelled out in his [or her] pleading . . . .'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9; and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

In the above-captioned case, as noted above, the pro se plaintiff, Mr. Kemper, filed an Application to Proceed In Forma Pauperis. In general, to provide access to this court to those who cannot pay the filing fees mandated by Rule 77.1(c) (2017) of the RCFC, 28 U.S.C. § 1915 (2012) permits a court to allow a plaintiff to file a complaint without payment of fees or security, under specific circumstances. Section 1915(a)(1) states that:

Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of

all assets such prisoner[4] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1). Therefore, the statute at 28 U.S.C. § 1915(a)(1) requires a person to submit an affidavit with a statement of all the applicant's assets, and that the affidavit state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress. See id.

When enacting the in forma pauperis statute, 28 U.S.C. § 1915, Congress recognized that "'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 324 (1989)); see also McCullough v. United States, 76 Fed. Cl. 1, 3 (2006), appeal dismissed, 236 F. App'x 615 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007). Accordingly, Congress included subsection (e) in the in forma pauperis statute, which allows courts to dismiss lawsuits determined to be "frivolous or malicious." 28 U.S.C. § 1915(e). The United States Supreme Court has found that "a court may dismiss a claim as factually frivolous only if the facts alleged are 'clearly baseless' . . . a category encompassing allegations that are 'fanciful' . . . 'fantastic' . . . and 'delusional . . . .'" Denton v. Hernandez, 504 U.S. at 32-33 (internal citations omitted); see also McCullough v. United States, 76 Fed. Cl. at 3; Schagene v. United States, 37 Fed. Cl. at 663. Courts, however, should exercise caution in dismissing a case under section 1915(e) because a claim that the court perceives as likely to be unsuccessful is not necessarily frivolous. See Denton v. Hernandez, 504 U.S. at 33. As stated by the

_____

[4] A number of courts have reviewed the words of 28 U.S.C. § 1915(a)(1), regarding in forma pauperis applications by non-prisoner litigants in federal courts, and have concluded that Congress did not intend for non-prisoners to be barred from being able to proceed in forma pauperis in federal court. See, e.g., Floyd v. United States Postal Serv., 105 F.3d 274, 275-76 (6th Cir.), reh'g denied (6th Cir. 1997); Schagene v. United States, 37 Fed. Cl. 661, 663 (1997), appeal dismissed, 152 F.3d 947 (Fed. Cir. 1998); see also In re Prison Litigation Reform Act, 105 F.3d 1131, 1134 (6th Cir. 1997) (discussing how to administer in forma pauperis rights to a non-prisoner, thereby acknowledging the rights of non-prisoners to apply for in forma pauperis status); Leonard v. Lacy, 88 F.3d 181, 183 (2d Cir. 1996) (using "sic" following the word "prisoner" in 28 U.S.C. § 1915(a)(1) seemingly to indicate that the use of that word was too narrow); Smith v. United States, 113 Fed. Cl. 241, 243 (2013); Powell v. Hoover, 956 F. Supp. 564, 566 (M.D. Pa. 1997) (holding that a "fair reading of the entire section [28 U.S.C. § 1915(a)(1)] is that it is not limited to prisoner suits."). Moreover, 28 U.S.C. § 1915(a)(1) refers to both "person" and "prisoner." The word "person" is used three times in the subsection, while the word "prisoner" is used only once. This court, therefore, finds that the single use of the word "prisoner" in the language of 28 U.S.C. § 1915(a)(1) was not intended to eliminate a non-prisoner from proceeding in federal court in forma pauperis, provided that the civil litigant can demonstrate appropriate need. Any other interpretation is inconsistent with the statutory scheme of 28 U.S.C. § 1915.

United States Supreme Court, "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Id.

The standard in 28 U.S.C. § 1915(a)(1) for in forma pauperis eligibility is "unable to pay such fees or give security therefor." Determination of what constitutes "unable to pay" or unable to "give security therefor," and, therefore, whether to allow a plaintiff to proceed in forma pauperis is left to the discretion of the presiding judge, based on the information submitted by the plaintiff or plaintiffs. See, e.g., Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 217–18 (1993); Roberson v. United States, 115 Fed. Cl. 234, 239, appeal dismissed, 556 F. App'x 966 (Fed. Cir. 2014); Fuentes v. United States, 100 Fed. Cl. 85, 92 (2011). This court and its predecessors were established to make available a user friendly forum in which plaintiffs can submit their legitimate claims against the sovereign, limited only by the legislative decision to waive sovereign immunity as to the types of claims allowed. In fact, prominently posted at the entrance to this courthouse are the words of Abraham Lincoln: "It is as much the duty of government to render prompt justice against itself, in favor of citizens, as it is to administer the same, between private individuals."

Interpreting an earlier version of the in forma pauperis statute, the United States Supreme Court offered the following guidance:

> We cannot agree with the court below that one must be absolutely destitute to enjoy the benefit of the statute. We think an affidavit is sufficient which states that one cannot because of his poverty "pay or give security for the costs . . . and still be able to provide" himself and dependents "with the necessities of life." To say that no persons are entitled to the statute's benefits until they have sworn to contribute to payment of costs, the last dollar they have or can get, and thus make themselves and their dependents wholly destitute, would be to construe the statute in a way that would throw its beneficiaries into the category of public charges. The public would not be profited if relieved of paying costs of a particular litigation only to have imposed on it the expense of supporting the person thereby made an object of public support. Nor does the result seem more desirable if the effect of this statutory interpretation is to force a litigant to abandon what may be a meritorious claim in order to spare himself complete destitution. We think a construction of the statute achieving such consequences is an inadmissible one.

Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339-40 (1948) (omissions in original). In Fiebelkorn v. United States, for example, a judge of the United States Court of Federal Claims indicated that:

> [T]he threshold for a motion to proceed in forma pauperis is not high: The statute requires that the applicant be 'unable to pay such fees.' 28 U.S.C. § 1915(a)(1). To be 'unable to pay such fees' means that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute.

7

Fiebelkorn v. United States, 77 Fed. Cl. 59, 62 (2007); see also Conerly v. United States, No. 18-310C, 2018 WL 1391912, at *2 (Fed. Cl. Mar. 20, 2018) (discussing standard to proceed in forma pauperis and denying plaintiff's in forma pauperis application); see also McDermott v. United States, 130 Fed. Cl. 412, 414 (2017) (quoting Fiebelkorn v. United States, 77 Fed. Cl. at 62); see also Fuentes v. United States, 100 Fed. Cl. at 92; Hayes v. United States, 71 Fed. Cl. 366, 369 (2006).

In his Application to Proceed In Forma Pauperis (Application), plaintiff indicates that he is currently unemployed and has been unemployed for "several years." He also states that he receives "social security $1200 a mo for 100% OF LIVING EXPENSES." Further, in response to question number four of the Application, which asks the applicant "[h]ow much money do you have in cash or in a checking, savings, or inmate account?" plaintiff responds "$133 VA disability check." Plaintiff also states that he has regular monthly "rent, gas, electricity, phone" expenses. Plaintiff, however, fails to provide the amount of each monthly expense, as required by the Application. Plaintiff also fails to indicate, as required by the Application, whether he has received in the past twelve months money from any "[b]usiness, profession, or other form of self-employment," "[r]ent payments, interest or dividends," or "[p]ensions, annuities, or life insurance payments." Without a properly filled out Application, the court cannot evaluate whether plaintiff has sufficient surplus income to afford the court filing fee, or whether "paying such fees would constitute a serious hardship on the plaintiff." Fiebelkorn v. United States, 77 Fed. Cl. at 62. Plaintiff's Application, thus, would fail because plaintiff has not demonstrated that he is unable to pay the fees, as required by 28 U.S.C. § 1915(a)(1). As discussed in detail below, however, his Application is moot because his complaint is being dismissed as barred by the collateral estoppel doctrine and because this court lacks subject matter jurisdiction over plaintiff's claims.[5]

---

[5] The court notes that plaintiff is a frequent filer of complaints in federal courts. As of 2018, plaintiff has filed at least five previous lawsuits and one appeal in federal courts. Of those filings, two were noted above, namely, plaintiff's complaint before the District Court for the District of Arizona, which was dismissed for a lack of subject matter jurisdiction and for failure to state a claim, and his subsequent appeal to the Ninth Circuit Court of Appeals, which was dismissed as frivolous. See Kemper v. United States Dep't of Vocational Rehab., No. 17-00375-PHX-GMS, at 4 (D. Ariz. March 9, 2017), appeal dismissed as frivolous, No. 17-15523 (9th Cir. June 14, 2017). Of the remaining filings, one complaint was filed in this court and assigned to Judge Lettow of this court, who dismissed plaintiff's complaint for failure to state a claim and for lack of subject matter jurisdiction. See Kemper I, 2017 WL 3274942, at *3 ("Accordingly, the court lacks jurisdiction over Mr. Kemper's claims. Dismissal is appropriate pursuant to 28 U.S.C. § 1915(e), which provides that 'the court shall dismiss the case at any time' upon determining that the action, among other things, 'fails to state a claim on which relief may be granted.'"). Another complaint, filed in the District Court for the Eastern District of California, was dismissed because plaintiff did not comply with a court order to file an amended complaint and apparently did not take any further action to prosecute his case. See Kemper v. Cal. State Univ., Sacramento, No. 217-CV-0895-GEB-AC-PS, 2017 WL 4699998, at *1 (E.D. Cal. Oct. 19, 2017) ("Therefore, IT IS HEREBY RECOMMENDED that this action be dismissed, without prejudice, for lack of prosecution and for failure to

As noted above, defendant alleges that plaintiff's complaint is barred under the collateral estoppel doctrine by Judge Lettow's decision in Kemper I. The doctrine of res judicata "includes the two related concepts of claim preclusion and issue preclusion." Nasolak Coating Corp. v. Nylok Corp., 522 F.3d 1320, 1323 (Fed. Cir. 2008). As articulated by the United States Supreme Court, the rule of issue preclusion, or collateral estoppel, precludes a party from re-litigating an issue that was "litigated and resolved in a valid court determination essential to the prior judgment." New Hampshire v. Maine, 532 U.S. 742, 748-49, reh'g denied, 533 U.S. 968 (2001). In addition, "[u]nder the judicially-developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." United States v. Mendoza, 464 U.S. 154, 158 (1984); see also Allen v. McCurry, 449 U.S. 90, 94 (1980) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."). "When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443 (1970). The United States Supreme Court has explained that issue preclusion guards against "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana v. United States, 440 U.S. 147, 153–54 (1979) (footnote omitted). The Supreme Court also more recently stated:

> Issue preclusion bars successive litigation of "an issue of fact or law" that "is actually litigated and determined by a valid and final judgment, and . . . is essential to the judgment." Restatement (Second) of Judgments § 27 (1980) (hereinafter Restatement). If a judgment does not depend on a given determination, relitigation of that determination is not precluded. Id., § 27, Comment h.

Bobby v. Bies, 556 U.S. 825, 834 (2009); see also Knowles Elecs. LLC v. Cirrus Logic, Inc., 883 F.3d 1358, 1370 (Fed. Cir. 2018) ("[c]ollateral estoppel, like the related doctrine of res judicata, serves to 'relieve parties of the cost and vexation of multiple law-suits,

---

comply with the court's order."). Two additional complaints were both filed in the District Court for the District of Columbia. One was dismissed without prejudice and without any further explanation. See Kemper v. U.S. Dep't of Voc Rehab, No. 17-2051-UNA, at 1 (D.D.C. Nov. 23, 2017) ("[I]t is ORDERED that plaintiff's application to proceed in forma pauperis [Dkt. #2] is GRANTED, and this case is DISMISSED without prejudice."). The other was dismissed for lack of subject matter jurisdiction. See Kemper v. U.S. Dep't of Educ., et al., No. 17-683, at 6 (D.D.C. Jan. 4, 2018) ("[S]ubject matter jurisdiction is lacking. Consequently, Defendants' motion to dismiss under Rule 12(b)(1) is GRANTED, Plaintiff's motions are DENIED, and the case is DISMISSED without prejudice."). Also, on May 26, 2015, plaintiff filed a complaint in the District Court for the District of Columbia, which was voluntarily dismissed on July 18, 2016. See Kemper v. U.S. Dep't of the Interior, No. 15-0771-APM (D.D.C. July 18, 2016).

conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" (quoting United States v. Mendoza, 464 U.S. at 158)).

The Court of Appeals for the Federal Circuit set out four guidelines for determining whether issue preclusion is appropriate:

> Issue preclusion bars a cause of action when four conditions are met: "(1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) the plaintiff had a full and fair opportunity to litigate the issue in the first action."

Laguna Hermosa Corp. v. United States, 671 F.3d 1284, 1288 (Fed. Cir. 2012) (quoting In re Freeman, 30 F.3d 1459, 1465 (Fed. Cir. 1994); see also Biafora v. United States, 773 F.3d 1326, 1333 (Fed. Cir. 2014).

The Court of Appeals for the Federal Circuit also has explained that principles of issue preclusion may apply to questions of jurisdiction. See Amgen Inc. v. United States Int'l Trade Comm'n, 902 F.2d 1532, 1536 n.5 (Fed. Cir. 1990) ("Dismissals for lack of jurisdiction may be given res judicata effect as to the jurisdictional issue.").[6] Similarly, judges of the United States Court of Federal Claims have indicated that, under the doctrine of issue preclusion, or collateral estoppel, this court may be precluded from exercising subject matter jurisdiction in an ongoing action when the same action, based on the same facts, has been previously dismissed on jurisdictional grounds and the jurisdictional flaw that necessitated dismissal on the first suit has not been cured. See Lowe v. United States, 79 Fed. Cl. 218, 228 (2007) ("It is beyond cavil that the issue of collateral estoppel goes to subject matter jurisdiction, and may be pleaded as a 12(b)(1) motion." (citing Schwasinger v. United States, 49 F. App'x 888 (Fed. Cir. 2002) (affirming lower court's dismissal of a plaintiff's third complaint on the basis of collateral estoppel because plaintiff's two prior complaints were identical to the third complaint and had been dismissed for lack of subject matter jurisdiction)); see also Goad v. United States, 46 Fed. Cl. 395, 398, appeal dismissed, 243 F.3d 553 (Fed. Cir.), cert. denied, 531 U.S. 1015 (2000). ("[I]f the second-filed claim contains new information which cures the jurisdictional defect fatal to the first-filed suit, then the second-filed suit presents a different jurisdictional issue and res judicata does not apply."). Although "the mere dismissal of a claim for lack of subject matter jurisdiction does not operate as an adjudication of that claim on the merits," a dismissal for lack of subject matter jurisdiction retains "some preclusive effect" unless, after the initial dismissal, a plaintiff has cured the jurisdictional deficiency identified in the first suit. See Lowe v. United States, 79 Fed. Cl. at 229 (emphasis in original).

---

[6] The court notes that in an unpublished opinion, the United States Court of Appeals for the Federal Circuit stated that "[i]t is well settled that the principles of res judicata apply to questions of jurisdiction as well as to other issues." Citizens Elecs. Co., Ltd. v. OSRAM GmbH, 225 F. App'x 890, 893 (Fed. Cir. 2007) (citing American Sur. Co. v. Baldwin, 287 U.S. 156, 166, 53 S. Ct. 98, 77 L. Ed. 231 (1932)).

Beginning with the first condition outlined by the Federal Circuit in <u>Laguna Hermosa Corp. v. United States</u>, 671 F.3d 1284 for the collateral estoppel doctrine to apply, that the issue is identical to the one previously litigated, the court finds that this condition is met in the above-captioned case. Upon review of plaintiff's current complaint and his complaint previously filed in <u>Kemper I</u> before Judge Lettow of this court, which was attached to defendant's motion to dismiss, it appears as if plaintiff cut and pasted his allegations from his <u>Kemper I</u> complaint into his complaint currently before this court. Plaintiff's current complaint mirrors the complaint filed in <u>Kemper I</u>, but for minor word changes, with no significant or meaningful variance. For example, plaintiff alleges word-by-word in both complaints, using the word "wold" instead of "would," that he "examined the VA's web site and reviewed the offerings for veterans," and that the website allegedly stated that "the vet's office of Vocational Rehabilitation wold talk to prospective employers and get interviews," for the applying veteran. Plaintiff also identically alleges in both complaints under the section entitled "ISSUES PRESENTED FOR REVIEW," that "[t]he Department of Voc Rehab claimed that they did none of the services included on their web site [That is fraudulent.]" with the same capitalization and brackets. With regard to plaintiff's breach of contract claim, plaintiff also identically alleges in both complaints that he had a "written agreement" with the "department and the counselor, Mr. Arnett." Additionally, plaintiff states in both complaints that "[t]he Department of voc Rehab would get the Plaintiff a volunteer job which the VA would pay for. The department of voc Rehab did neither --they found no volunteer job for the Plaintiff and did not coordinate 3 months payment for the Plaintiff."

"As to the second condition, 'the requirement that the issue have been actually decided is generally satisfied if the parties to the original action disputed the issue and the trier of fact decided it.'" <u>Laguna Hermosa Corp. v. United States</u>, 671 F.3d at 1288. The court finds that this second condition also is met in plaintiff's case. The parties to the above-captioned case are the same parties as those litigating in <u>Kemper I</u>. Moreover, Judge Lettow in <u>Kemper I</u> previously decided that this court "lacks jurisdiction over Mr. Kemper's claim that the VA allegedly failed to provide him with particular benefits in his search for volunteer employment," the same claim plaintiff now seeks to assert in the above-captioned case. <u>See Kemper I</u>, 2017 WL 32749242, at *2. Judge Lettow also found that "the court does not have jurisdiction over Mr. Kemper's fraud claim because such an allegation is based in tort," the second claim Mr. Kemper seeks to assert in the case currently under review by this court. <u>Id.</u>

With regard to the third condition of the collateral estoppel doctrine, that the "resolution of the issue [to be precluded] was essential to a final judgment in the first action," the court also finds that this condition has been met in the above-captioned case. <u>See Laguna Hermosa Corp. v. United States</u>, 671 F.3d at 1288. As noted above, Judge Lettow dismissed plaintiff's complaint in <u>Kemper I</u> because the "court lacks jurisdiction over Mr. Kemper's claims." <u>Kemper I</u>, 2017 WL 32749242, at *2. Although dismissal for lack of jurisdiction is not a judgment on the merits of the claim, the dismissal retains its preclusive effect unless the grounds for the dismissal have been corrected and the reason the complaint was initially dismissed has been "cured." <u>See Goad v. United States</u>, 46 Fed. Cl. at 398. Such a "cure" requires an update in facts or change in applicable law that

would remedy the original defect with the claim that this court has subject matter jurisdiction. See Comm'r of Internal Revenue v. Sunnen, 333 U.S. 591, 600 (1948); see also Lowe v. United States, 79 Fed. Cl. at 230; see also Goad v. United States, 46 Fed. Cl. at 398. Based on the record before the court, the underlying facts in Mr. Kemper's case currently before the court remain unchanged from plaintiff's case decided in Kemper I. There has also been no operable change in the facts or the applicable law since plaintiff's claims were decided in Kemper I.

Finally, the fourth condition under the collateral estoppel doctrine requires that "the plaintiff had a full and fair opportunity to litigate the issue in the first action." Laguna Hermosa Corp. v. United States, 671 F.3d at 1288; see also In re Freeman, 30 F.3d at 1467 (citing Jackson Jordan, Inc. v. Plasser American Corp., 747 F.2d 1567, 1574 (Fed. Cir. 1984)). "[R]elitigation of issues is warranted, however, if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in the prior litigation." Id. (citing Montana v. United States, 440 U.S. at 164 & n.11). Pro se status in a former claim does not entitle a litigant to automatically claim that he had insufficient representation because of the pro se status in an effort to overcome the fourth condition of collateral estoppel.[7] In the current case before this court, plaintiff fails to allege or document any identifiable circumstances to demonstrate that plaintiff was denied a "full and fair opportunity to litigate" his claims in Kemper I. The issues raised by plaintiff in Kemper I were properly and fully litigated. As a result, the fourth condition for collateral estoppel is met. In sum, this court finds that plaintiff is collaterally estopped from re-litigating the subject matter jurisdiction of this court over his complaint in the above-captioned case, which was already fully litigated and dismissed by Judge Lettow in Kemper I. See Biafora v. United States, 773 F.3d at 1333; see also Laguna Hermosa Corp. v. United States, 671 F.3d at 1288; In re Freeman, 30 F.3d at 1465.

As noted above, defendant argues in the alternative that "[e]ven if Mr. Kemper's complaint were not barred by collateral estoppel, the Court still lacks jurisdiction to entertain Mr. Kemper's claims, and still must dismiss the complaint, for the additional reasons discussed in Kemper I." (italics in original). This court agrees that, even absent the collateral estoppel bar to re-litigating plaintiff's case after Kemper I, the issues raised in plaintiff's complaint currently before the court are not within the subject matter jurisdiction of this court. "Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citing Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)). The Tucker Act, 28 U.S.C. § 1491 (2011), grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the

---

[7] For example, the Court of Appeals for the Federal Circuit, in an unpublished case, found that the pro se plaintiff had a "full and fair opportunity to present his originally filed complaint," and, thus, affirmed the Court of Federal Claims' dismissal of the pro se plaintiff's complaint as collaterally estopped. See Thomas v. United States, 245 F. App'x 18, 19-20 (Fed. Cir. 2007).

> Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289-90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Alvarado Hosp., LLC v. Price, 868 F.3d 983, 991 (Fed. Cir. 2017); Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Golden v. United States, 118 Fed. Cl. 764, 768 (2014). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v.] Testan, 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-

> does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. 392, 400 (1976)); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Price v. United States, 133 Fed. Cl. 128, 130 (2017); Peoples v. United States, 87 Fed. Cl. 553, 565-66 (2009).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. at 94 ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Fid. & Guar. Ins. Underwriters, Inc. v. United States, 805 F.3d 1082, 1084 (Fed. Cir. 2015); Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the

grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2017); Fed. R. Civ. P. 8(a)(1), (2) (2018); see also Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-57, 570). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (3d ed. 2004)); Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), aff'd, 460 U.S. 325 (1983). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

Regarding plaintiff's breach of contract claim, as discussed above, plaintiff asserts in his complaint, without documentation, that he entered into a written agreement with the "Department of Voc Rehab" for "3 months payment" for what at times in his complaint he labels as a "volunteer job." Plaintiff states in his complaint in this court that "Mr. Arnett never did contact any state or federal office seeking a volunteer position for the Plaintiff, per the written agreement the Plaintiff had with the department ["Department of Voc Rehab"] and the counselor, Mr. Arnett." Plaintiff also describes the services allegedly promised to him by the VA in his complaint as "offerings" by the VA to "work with the vet and help him or her get employment," and also "to help veterans get counseling when sought and a job also, when sought." Plaintiff also states in his complaint in this court that during his meeting with Mr. Arnett to discuss potential employment opportunities, Mr. Arnett "advised what he did and did not do," and "mentioned strictly volunteering and the paper processes applicable to same," and that "[t]heir only service was to contact federal or state offices to see who could use a volunteer for full time employment for three months duration." Also according to the complaint, plaintiff rejected the opportunity identified for him in his meeting with Mr. Arnett. Plaintiff states in his complaint that Mr. Arnett referred plaintiff to a potential volunteer opportunity with a contractor to "load food containers into bags for the hungry." According to his complaint, plaintiff turned down this opportunity because he "found it a place of 100% chaos." Plaintiff additionally states in his complaint that his response to the VA's alleged proposed service was that he "was aghast as this was the very last thing he desired," and that he "mentioned [to Mr. Arnett during their in-person meeting] that the idea of the VA paying for the volunteer services of a services candidate [the Plaintiff] was a contradiction in law and logic." Plaintiff then reiterates in his complaint that the alleged opportunity identified by "Department of Voc Rehab" to pay plaintiff for three months of volunteer work was "[again, a contradiction but how the Rehab office worked.]" Similarly, in his February 6, 2018 document, plaintiff refers to the VA's

alleged opportunity to "get the Plaintiff a volunteer job wich the VA would pay for," a "very absurd contract which the plaintiff brought to the a of arnett--who said that is the way the d creates contracts."

To have privity of contract with the United States government, and therefore invoke the jurisdiction of the United States Court of Federal Claims for his alleged breach of contract claim, plaintiff "must show that either an express or implied-in-fact contract underlies [the] claim." Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997). An express contract "must be manifested by words, either oral or written." Webster University v. United States, 20 Cl. Ct. 429, 433 (1990). An implied-in-fact contract, however, is an agreement "'"founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding."'" Trauma Serv. Grp. v. United States, 104 F.3d at 1325 (Fed. Cir. 1997) (quoting Hercules, Inc. v. United States, 516 U.S. 417, 424 (1996) (quoting Balt. & Ohio R.R. Co. v. United States, 261 U.S. 592, 597 (1923))); see also Kam-Almaz v. United States, 682 F.3d 1364, 1368 (Fed. Cir. 2012); Bank of Guam v. United States, 578 F.3d 1318, 1329 (Fed. Cir.) (citing Trauma Serv. Grp. v. United States, 104 F.3d at 1326), reh'g and reh'g en banc denied (Fed. Cir. 2009); Bay View, Inc. v. United States, 278 F.3d 1259, 1265-66 (Fed. Cir. 2001), reh'g and reh'g en banc denied, 285 F.3d 1035 (Fed. Cir.), cert. denied, 537 U.S. 826 (2002); XP Vehicles, Inc. v. United States, 121 Fed. Cl. 770, 781 (2015); Westlands Water Dist. v. United States, 109 Fed. Cl. 177, 203 (2013); Peninsula Grp. Capital Corp. v. United States, 93 Fed. Cl. 720, 728 (2010) (citing Balt. & Ohio R.R. Co. v. United States, 261 U.S. at 597; and Russell Corp. v. United States, 210 Ct. Cl. 596, 609 (1976)), appeal dismissed, 454 F. App'x 900 (Fed. Cir. 2011). Such an agreement will not be implied "unless the meeting of minds was indicated by some intelligible conduct, act or sign." Balt. & Ohio R.R. Co. v. United States, 261 U.S. at 598; see also Russell Corp. v. United States, 210 Ct. Cl. at 609.

The elements for both express and implied contracts with the United States are identical. See Night Vision Corp. v. United States, 469 F.3d 1369, 1375 (Fed. Cir. 2006) ("The elements of an implied-in-fact contract are the same as those of an oral express contract."), cert. denied, 550 U.S. 934 (2007); Hanlin v. United States, 316 F.3d at 1328 ("Thus, the requirements for an implied-in-fact contract are the same as for an express contract; only the nature of the evidence differs."); City of Cincinnati v. United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998). The required elements to demonstrate an express or implied contract are: "(1) mutuality of intent to contract; (2) consideration; and, (3) lack of ambiguity in offer and acceptance." Id. See also Bank of Guam v. United States, 578 F.3d at 1326 (quoting Trauma Serv. Grp. v. United States, 104 F.3d at 1325); see also Chattler v. United States, 632 F.3d 1324, 1330 (2011) (citing Trauma Serv. Grp. v. United States, 104 F.3d at 1325); Hanlin v. United States, 316 F.3d 1325, 1328 (Fed. Cir. 2003) (citing City of Cincinnati v. United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998)); Edwards v. United States, 22 Cl. Ct. 411, 420 (1991) (citing Essen Mall Props. v. United States, 21 Cl. Ct. 430, 440 (1990); Pac. Gas & Elec. Co. v. United States, 3 Cl. Ct. 329, 339 (1983), aff'd, 738 F.2d 452 (Fed. Cir. 1984); and City of Klawock v. United States, 2 Cl. Ct. 580, 584 (1983), aff'd, 732 F.2d 168 (Fed. Cir. 1984)); see also Total Med. Mgmt., Inc. v. United

States, 104 F.3d 1314, 1319 (Fed. Cir.) ("The requirements for a valid contract with the United States are: a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract." (citations omitted)), reh'g denied and en banc suggestion declined (Fed. Cir.), cert. denied, 522 U.S. 857 (1997); San Carlos Irr. & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989); Stanwyck v. United States, 127 Fed. Cl. 308, 312 (2016); Huntington Promotional & Supply, LLC v. United States, 114 Fed. Cl. at 767; Eden Isle Marina, Inc. v. United States, 113 Fed. Cl. 372, 492 (2013); Council for Tribal Emp't Rights v. United States, 112 Fed. Cl. 231, 243 (2013), aff'd, 556 F. App'x 965 (2014).

When the United States is a party to an alleged express or implied-in-fact contract, "a fourth requirement is added: The government representative whose conduct is relied upon must have actual authority to bind the government in contract." City of Cincinnati v. United States, 153 F.3d at 1377 (quoting City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990)); Trauma Serv. Grp. v. United States, 104 F.3d at 1325; Russell Corp. v. United States, 210 Ct. Cl. at 608-09; Weeks v. United States, 124 Fed. Cl. 630, 633 (2016); Huntington Promotional & Supply, LLC v. United States, 114 Fed. Cl. at 767; Vargas v. United States, 114 Fed. Cl. 226, 233 (2014); Prairie Cnty., Mont. v. United States, 113 Fed. Cl. 194, 202 (2013), aff'd, 782 F.3d 685 (Fed. Cir.), cert. denied, 136 S. Ct. (2015); Mastrolia v. United States, 91 Fed. Cl. 369, 384 (2010) (citing Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1265 (2005)). As a general proposition:

> [T]he law requires that a Government agent who purports to enter into or ratify a contractual agreement that is to bind the United States have actual authority to do so. See Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997). The corollary is that any party entering into an agreement with the Government accepts the risk of correctly ascertaining the authority of the agents who purport to act for the Government . . . .

Monarch Assurance P.L.C. v. United States, 244 F.3d 1356, 1360 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001); see also Snyder & Assocs. Aquisitions LLC v. United States, 133 Fed. Cl. 120, 126 (2017).

Assuming plaintiff could demonstrate mutuality of intent to contract, consideration, and lack of ambiguity of an offer and acceptance, plaintiff bears the burden of proving that Mr. Arnett, who plaintiff contends signed the alleged agreement with him, had authority to enter into this agreement, which plaintiff has failed to establish. It is well established that the government is not bound by the acts of its agents beyond the scope of their actual authority. See Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947) ("[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority."). Plaintiff does not allege, or is there any evidence in the record before the court, that Mr. Arnett had actual authority to bind the United States. The fact that plaintiff may have believed or wanted to believe that Mr. Arnett held such authority is not sufficient. See Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429,

1432 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1998), cert. denied, 525 U.S. 1177 (1999); see also Trauma Serv. Grp. v. United States, 104 F.3d at 1327 (The plaintiff "must prove all of the requirements for a binding contract in order to prevail" and "must allege facts sufficient to show that the Government representative who entered into its alleged implied-in-fact contract was a contracting officer or had implied actual authority to bind the Government.").

In the record currently before the court, as discussed above, there is no documentation of an express contract, including no written agreement between the United States and plaintiff, despite plaintiff's vague allegation of a written contract. Moreover, although not directly stated, to the extent that plaintiff possibly may be suggesting that he entered into an implied-in-fact contract with the VA, there is no evidence in the record before the court that plaintiff and the VA entered into an implied-in-fact contract, nor has plaintiff alleged the required elements of a binding contract. "'A well pleaded allegation of an express, or implied-in-fact, contract necessarily includes allegations going to each of the requisite elements of a contract,'" De Archibold v. United States, 57 Fed. Cl. 29, 32 (2003) (quoting McAfee v. United States, 46 Fed. Cl. 428, 432, appeal dismissed, 243 F.3d 565 (Fed. Cir. 2000)), as well as proof that a contract between the plaintiff and the United States came into existence. In sum, based on the record before the court, no breach of an express or implied-in-fact contract is established as having occurred and plaintiff's breach of contract fails.[8]

As discussed above, plaintiff also vaguely alleges a fraud claim. He does not indicate whether he is alleging a claim of criminal or civil fraud. According to the complaint, plaintiff states that the website for the "Department of Voc Rehab" allegedly stated that

---

[8] To the extent that plaintiff is a veteran, which plaintiff never explicitly alleges in his complaint, the appropriate avenue for plaintiff to obtain review of a potential claim against the VA regarding a denial of available veterans' benefits is, as the defendant alleges in its motion to dismiss, through the administrative proceedings at the VA, including any applicable appeal processes. See 38 U.S.C. § 511(a) (2012) ("The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans."). In addition,

> [i]f an individual receives an adverse decision from the Secretary, the Veterans' Judicial Review Act, Pub. L. No. 100–687, 102 Stat. 4105 (1988) (codified at 38 U.S.C. §§ 7251–99), provides the statutory route that the individual must follow in appealing the decision. This includes an appeal to the Board of Veterans Appeals, 38 U.S.C. § 7104, the Court of Appeals for Veterans Claims, 38 U.S.C. § 7252(a), and finally the Federal Circuit, 38 U.S.C. § 7292(c).

Estate of Smallwood v. United States, 130 Fed. Cl. 395, 399–400 (2017) (holding that the court lacked jurisdiction over allegations regarding the wrongful denial of benefits by the VA).

the "Department of Voc Rehab" "wold talk to prospective employers and get interviews for the net." Plaintiff then vaguely asserts that such representation was "fraudulent" because "[t]he Department of Voc Rehab [later] claimed that they did none of the services included on their web site." If plaintiff is even possibly trying to allege a criminal fraud claim, this court lacks jurisdiction to adjudicate that claim. The jurisdiction of the United States Court of Federal Claims does not include jurisdiction over criminal causes of action. See Joshua v. United States, 17 F.3d 378, 379 (Fed. Cir. 1994); see also Cooper v. United States, 104 Fed. Cl. 306, 312 (2012) (holding that "this court does not have jurisdiction over [plaintiff's] claims because the court may review neither criminal matters, nor the decisions of district courts.") (internal citations omitted). Mendes v. United States, 88 Fed. Cl. 759, 762, appeal dismissed, 375 F. App'x 4 (Fed. Cir. 2009); Hufford v. United States, 87 Fed. Cl. 696, 702 (2009) (holding that the United States Court of Federal Claims lacked jurisdiction over claims arising from the violation of a criminal statute); Fullard v. United States, 78 Fed. Cl. 294, 301 (2007) ("[p]laintiff alleges criminal fraud, a subject matter over which this court lacks jurisdiction.") (citing 28 U.S.C. § 1491); see also McCullough v. United States, 76 Fed. Cl. 1, 4 (2006) (finding that the court lacked jurisdiction to consider plaintiff's criminal claims), appeal dismissed, 236 F. App'x 615 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied 552 U.S. 1050 (2007); Matthews v. United States, 72 Fed. Cl. 274, 282 (finding that the court lacked jurisdiction to consider plaintiff's criminal claims), recons. denied, 73 Fed. Cl. 524 (2006).[9] Accordingly, to the extent plaintiff alleges criminal fraud, the claim must be dismissed for lack of subject matter jurisdiction.

This court also lacks jurisdiction to hear tort claims against the United States. See 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction . . . in cases not sounding in tort."); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993) ("[T]ort cases are outside the jurisdiction of the Court of Federal Claims today."); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343; Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997) ("The Court of Federal Claims is a court of limited jurisdiction. It lacks jurisdiction over tort actions against the United States."); Kant v. United States, 123 Fed. Cl. 614, 616 (2015). In contrast, "district courts have exclusive jurisdiction to consider tort claims against the United States that fall within the purview of the FTCA [Federal Tort Claims Act]." Bobka v. United States, 133 Fed. Cl. 405, 412 (2017).

It is well-established an allegation of fraud is a tort claim. See Brown v. United States, 105 F.3d at 623 ("Because Brown and Darnell's complaints for 'fraudulent assessment[s]' are grounded upon fraud, which is a tort, the court lacks jurisdiction over those claims."); see also Bobka v. United States, 133 Fed. Cl. at 412 ("Mr. Bobka also alleges that the government engaged in tortious conduct, e.g., fraud, negligence, and defamation. This court, however, does not have jurisdiction over allegations based in

---

[9] The Court of Appeals for the Federal Circuit recently wrote in an unpublished opinion that, "[t]he Court of Federal Claims likewise lacks jurisdiction to adjudicate claims brought under federal or state criminal statutes." Spitters v. United States, 710 F. App'x 896, 897 (Fed. Cir. 2018) (citing Joshua v. United States, 17 F.3d at 379).

tort."); see also Outlaw v. United States, 116 Fed. Cl. 656, 662 (2014) ("fraud and coercion are tort claims—over which this court has no Tucker Act jurisdiction."); Mata v. United States, 114 Fed. Cl. 736, 754 (2014) ("Plaintiff's allegation of fraud sounds in tort, and this court has no jurisdiction over claims that sound in tort."); see also Aetna Cas. And Sur. Co. v. United States, 228 Ct. Cl. 146, 655 F.2d 1047 (1981) (holding that fraudulent inducement and misrepresentation allegations were tort claims "expressly beyond our Tucker Act jurisdiction."); cf. Somali Dev. Bank v. United States, 205 Ct. Cl. 741, 749, 508 F.2d 817, 821 (1974) ("claims based on negligent misrepresentation, wrongful inducement, or the careless performance of a duty allegedly owed, are claims sounding in tort.").[10] Plaintiff alleges that the VA claimed that it did not offer certain services that were allegedly publicized on its website and, according to plaintiff, such conduct by the VA was "fraudulent." It is evident from the record before the court that plaintiff is alleging a fraud that sounds in tort and, thus, plaintiff's fraud claim is not within this court's subject matter jurisdiction. See Brown v. United States, 105 F.3d at 623; see also Bobka v. United States, 133 Fed. Cl. at 412.

---

[10] This court, however, can have jurisdiction over a fraud claim "where a tort claim stems from a breach of contract," because "the cause of action is ultimately one arising in contract, and thus is properly within the exclusive jurisdiction of the Court of Federal Claims . . . ." Awad v. United States, 301 F.3d 1367, 1372 (Fed. Cir. 2002); see also Solaria Corp. v. United States, 123 Fed. Cl. 105, 123 (2015) ("if the 'alleged misrepresentations are merely another way of asserting that a breach of contract occurred . . . the claim is not barred simply because it might also be stated as a tort.'" (quoting Olin Jones Sand Co. v. United States, 225 Ct. Cl. 741, 745, 1980 WL 13211 (1980))); Charnetski v. United States, 111 Fed. Cl. 185, 190 (2013) ("[i]f contractual relations exist, the fact that the alleged breach is also tortious does not foreclose Tucker Act jurisdiction." (quoting Fountain v. United States, 192 Ct. Cl. 495, 498, 427 F.2d 759, 761 (1970))). Thus, for this court to adjudicate fraud claims sounding in tort, "there must be a direct connection between the Government's contractual obligations and the alleged tortious conduct." Solaria Corp. v. United States, 123 Fed. Cl. at 123 (quoting H.H.O., Inc. v. United States, 7 Cl. Ct. 703, 706 (1985)). This exception to the general rule of no tort jurisdiction does not apply to plaintiff's fraud claim because no contract between plaintiff and the United States ever came into existence.

## CONCLUSION

For the forgoing reasons, the court finds that plaintiff's complaint is barred under the collateral estoppel doctrine. The court also finds that, even absent a collateral estoppel bar, the court lacks subject matter jurisdiction over the claims alleged in plaintiff's complaint. Accordingly, the court **DISMISSES** plaintiff's complaint as frivolous, and **GRANTS** defendant's motion to dismiss. The Clerk of Court shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**

**MARIAN BLANK HORN**
**Judge**